**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (DAYTON)**

| | | |
|---|---|---|
| JOHN F.,[1] | : | Case No. 3:22-cv-00260 |
|     Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
|     Defendant. | : | |

---

## DECISION AND ORDER

---

Plaintiff filed an application for Disability Insurance Benefits in April 2020.

Plaintiff's claim was denied initially and upon reconsideration. After a hearing at

Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not

eligible for benefits because he was not under a "disability" as defined in the Social

Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff

subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award

of benefits or, in the alternative, for further proceedings. The Commissioner asks the

Court to affirm the non-disability decision. For the reasons set forth below, this Court

REVERSES the Commissioner's decision and REMANDS for further proceedings.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

## I.    BACKGROUND

Plaintiff asserts that he has been under a disability since October 12, 2019. At that time, he was fifty years old. Accordingly, Plaintiff was considered a "person closely approaching advanced age" under Social Security Regulations. 20 C.F.R. § 404.1563(d). Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision (AR, Doc. No. 7-2 at PageID 38-52), Plaintiff's Statement of Errors ("SE," Doc. No. 8), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 9), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 10). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399,

406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence

3

supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.    FACTS

### A.    The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following findings of fact:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since October 12, 2019, the alleged onset date. |
| Step 2: | He has the severe impairments of residuals of a dissecting aortic aneurysm with resulting aortic valve replacement surgery, arthritis, obesity, depression, and anxiety. |
| Step 3: | He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "No more than frequent balancing. No more than occasional crouching, crawling, kneeling, stooping, or climbing of ramps and stairs. No climbing of |

4

ladders, ropes, and scaffolds. No work around hazards such as unprotected heights or dangerous machinery. [Plaintiff] is limited to performing simple, routine, and repetitive 1- and 2-step tasks. No more than occasional and superficial contact with supervisors and co-workers (superficial contact is defined as able to receive simple instructions, ask simple questions, and receive performance appraisals, but as unable to engage in more complex social interactions such as persuading other people or resolving interpersonal conflicts); no contact with the general public. No close, over-the-shoulder supervision, and no supervision of other employees. No fast-paced work or jobs which involve strict production quotas. [Plaintiff] is limited to jobs which involve very little, if any, change in the job duties or the work routine from one day to the next.

He is unable to perform any of his past relevant work.

Step 5:      Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.

(AR, Doc. No. 7-2 at PageID 40-51.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 51-52.)

**B.     State Agency Psychological Consultants**

State agency psychological consultant Kristen Haskins, Psy. D. completed a mental RFC assessment in September 2020. (AR, Doc. No. 7-3 at PageID 88, 91.) Dr. Haskins found mild impairment in the "B Criteria" areas of understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. (*Id.* at PageID 88.) She found moderate impairment in the areas of interacting with others and adapting or managing oneself. (*Id.*) Dr. Haskins opined that Plaintiff could "occasionally [and]

superficially interact in the work setting." (*Id.* at PageID 91.) In terms of adaptation, Dr.

Haskins opined:

> [Plaintiff] can work within a set routine where major changes are explained
> in advance and gradually implemented to allow [Plaintiff] time to adjust to
> the new expectations. [Plaintiff's] ability to handle routine stress and
> pressure in the work place would be reduced but adequate to handle tasks
> without strict time limitations or production standards.

(*Id.*)

Cindy Matyi, Ph.D. reviewed the updated record at the reconsideration level in

February 2021. (AR, Doc. No. 7-3 at PageID 97, 100-01.) Dr. Matyi found moderate

impairment in all four "B Criteria" areas of functioning. (*Id.* at PageID 97.) She opined

that Plaintiff could comprehend, remember, and carry out simple (defined as one- to two-

step) tasks and instructions, as well as occasional complex and detailed (defined as three-

to four-step) tasks and instructions. (*Id.* at PageID 100-01.) According to Dr. Matyi,

Plaintiff would be able to maintain attention, make simple decisions, and adequately

adhere to a schedule. (*Id.* at PageID 101.) As for social interactions, Dr. Mayti opined

that Plaintiff was capable of relating adequately "on a superficial basis in an environment

that entails infrequent public contact, minimal interaction with coworkers, and no over-

the-shoulder supervisor scrutiny." (*Id.*) She also noted that Plaintiff should not be

expected to supervise or persuade others. (*Id.*) Dr. Matyi adopted Dr. Haskins' adaptation

limitations. (*Id.*)

The ALJ concluded that he was "partially persuaded" by Dr. Haskins' opinion and

was "substantially persuaded" by Dr. Matyi's opinion. (AR, Doc. No. 7-2 at PageID 49.)

The ALJ explained:

> Both reviewing doctors found that [Plaintiff] is moderately limited in his ability to interact with others and adapt and manage himself, and should not be subject to more than superficial social interactions, strict time or production standards, or frequent and unexplained work routine changes. Dr. Matyi further clarified the extent of [Plaintiff's] social interaction limitations, which the undersigned has substantially adopted, and found that [Plaintiff] has moderate levels of limitation in all four areas of mental functioning, where Dr. Haskins found mild limitations in understanding, remembering, and applying information and in concentrating, persisting, and maintaining pace. Based on her conclusion that [Plaintiff] is more restricted than Dr. Haskins opined, Dr. Matyi also recommended that [Plaintiff] be limited to primarily simple tasks. These more restrictive limitations have also been included as part of [Plaintiff's] residual mental functional capacity, both out of an abundance of caution and considering [Plaintiff's] subjective complaints, which are consistent with what the undersigned finds to be a reasonable reaction to a significant medical episode, even one that has apparently been fully recovered from.

(*Id.*)

## IV.    LAW AND ANALYSIS

Plaintiff asserts just one error: "[T]he ALJ reversibly erred by failing to evaluate the opinions of the state agency psychological consultants for consistency and supportability as required by 20 C.F.R. § 404.1520c." (SE, Doc. No. 8 at PageID 2186.) For the reasons discussed below, Plaintiff's assertion is well-taken and the ALJ's decision shall be reversed.

### A.    Applicable Law

Social Security regulations require ALJs to adhere to certain standards when evaluating medical opinions. ALJs must analyze the persuasiveness of "*all* of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether the individual has one or more impairment-related

7

limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed his claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Significantly, because the first two factors—supportability and consistency—are the "most important" ones, the ALJ "*will* explain" how he or she considered them. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).[2] As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) . . . is with the evidence from

---

[2] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

**B.      The ALJ Reversibly Erred When Evaluating the Findings of the State Agency Psychological Consultants.**

The Court concludes that the ALJ erred because he did not address the supportability of the State agency psychological consultants' opinions pursuant to the applicable regulations. Additionally, the ALJ's findings regarding the consistency of the consultants' opinions are not supported by substantial evidence. For both of these reasons, the Court reverses and remands the ALJ's decision.

*1.      The ALJ's supportability analysis did not comply with the applicable regulations.*

The ALJ failed to explain his consideration of the supportability factor of the State agency psychological consultants' opinions, as required by 20 C.F.R. § 404.1520c(c)(2). The ALJ began his analysis by summarizing the consultants' opinions:

> Both reviewing doctors found that [Plaintiff] is moderately limited in his ability to interact with others and adapt and manage himself, and should not be subject to more than superficial social interactions, strict time or production standards, or frequent and unexplained work routine changes. Dr. Matyi further clarified the extent of [Plaintiff's] social interaction limitations, which the undersigned has substantially adopted, and found that [Plaintiff] has moderate levels of limitation in all four areas of mental functioning, where Dr. Haskins found mild limitations in understanding, remembering, and applying information and in concentrating, persisting, and maintaining pace. Based on her conclusion that [Plaintiff] is more restricted than Dr. Haskins opined, Dr. Matyi also recommended that [Plaintiff] be limited to primarily simple tasks.

(AR, Doc. No. 7-2 at PageID 49.) The ALJ then concluded: "These more restrictive limitations have also been included as part of [Plaintiff's] residual mental functional

capacity, both out of an abundance of caution and considering [Plaintiff's] subjective complaints, which are consistent with what the undersigned finds to be a reasonable reaction to a significant medical episode, even one that has apparently been fully recovered from." (*Id.*)

At most, this discussion addresses the consistency factor required by 20 C.F.R. § 404.1520c(c). But it does not address the supportability factor required by 20 C.F.R. § 404.1520c(c)(1), because it does not explain the ALJ's consideration of the consultants' supporting explanations and summaries of the evidence.

Defendant argues that the ALJ did not err because he "need not use the magic words of 'supportability' or 'consistency' to show that he considered these factors in reaching his RFC finding," as long as "the ALJ's decision, when read as a whole, shows that he substantively considered" the factors. (Mem. in Opp., Doc. No. 9 at PageID 2201.) The Court agrees that it must examine the ALJ's explanation of what he actually considered, and it has done so. None of Defendant's cited cases support its argument that the ALJ considered the supportability factor. (Mem. in Opp., Doc. No. 9 at PageID 2201, citing *Hardy v. Comm'r of Soc. Sec.*, 2021 WL 4059310, at *2 (S.D. Ohio Sept. 7, 2021); *Kraig v. Kijakazi*, 2022 WL 4232692, at *8 (N.D. Ohio Sept. 14, 2022); and *Cormany v. Comm'r of Soc. Sec.*, 2022 WL 2611952, at *7 (N.D. Ohio May 20, 2022).)

For example, the *Hardy* ALJ explained that the opinion of a consultative examiner was "the result of his own observations, clinical interview, and mental status evaluation." 2021 WL 4059310, at *3. The ALJ also discussed other evidence, including treatment records and the plaintiff's testimony, which undermined the examiner's opinion. *Id.* The

10

*Hardy* court found that these explanations demonstrated the ALJ's consideration of the supportability and consistency factors when evaluating the examiner's opinion. *Id.* at *4. The ALJ in this case did not include similar explanations or discussions in his decision.

Similarly, the ALJ in *Kraig* cited to a nurse practitioner's own treatment notes, as well as other treatment records and the plaintiff's testimony, to support her conclusion that the nurse practitioner's opinion was not persuasive. 2022 WL 4232692, at *7. And the ALJ in *Cormany* explained that a treating physician's opinion was unpersuasive because plaintiff's medical records showed improved symptoms. 2022 WL 2611952, at *7. The *Cormany* court determined that this explanation, in combination with the ALJ's summary of the evidence (which highlighted the same improvement when discussing that physician's treatment notes and records from other sources), satisfied the ALJ's obligation to analyze the supportability and consistency factors. *Id.* Such a conclusion would not be appropriate here.

Defendant also cites to several Sixth Circuit cases to support the assertion that the ALJ's decision should be read as a whole to determine whether his consideration of the opinion evidence was consistent with the regulations. (Mem. in Opp., Doc. No. 9 at PageID 2201-02 (citing *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-71 (6th Cir. 2006); *Chicora v. Comm'r of Soc. Sec.*, 852 F. App'x 968, 970 (6th Cir. 2021).) These cases are inapplicable because they applied the prior regulations for evaluating opinion evidence, which did not expressly require ALJs to explain their consideration of the supportability

and consistency factors. By contrast, the new regulations that apply in this case do impose such a requirement. 20 C.F.R. § 404.1520c(b)(2).

In this case, the ALJ did not explain how he considered the supportability factor. The ALJ cited only to Plaintiff's "subjective complaints" and his "ful[l] recover[y]" from a "significant medical episode" to discount the State agency psychological consultants' opinions. (AR, Doc. No. 7-2 at PageID 49.) This explanation arguably addresses the consistency factor by comparing the consultants' opinions to other evidence in the record. But the ALJ did not cite to any evidence from the consultants—such as their explanations or the evidence they reviewed—when he found their opinions less than fully persuasive. (AR, Doc. No. 7-2 at PageID 49). He therefore did not explain his consideration of the supportability factor, as he was required to do.

Finally, Defendant cites to a recent Sixth Circuit decision that applied the new regulations to support its argument that if substantial evidence supports the ALJ's conclusion that a medical opinion was unpersuasive, "any arguments as to evidence supporting other conclusions that the ALJ could have made 'are a veiled attempt to have [the Court] reweigh the evidence,' which the Court may not do." (Mem. in Opp., Doc. No. 9 at PageID 2202 (citing *Nasser v. Comm'r of Soc. Sec.*, 2022 WL 17348838, at *1 (6th Cir. Dec. 1, 2022).) This case is also distinguishable.

The *Nasser* ALJ discounted a treating physician's opinion on the basis that it was inconsistent with the physician's prior treatment records. 2022 WL 17348838, at *2. The plaintiff argued that the ALJ applied 20 C.F.R. § 404.1520c incorrectly—not because the ALJ failed to address supportability or consistency, but because several factors supported

the physician's opinion, namely: "[H]e was the physician with the closest relationship to [the plaintiff], his opinion was submitted under oath, and [the opinions of two other doctors] were inconsistent with other parts of the record." *Id.* The court rejected Plaintiff's arguments as "a veiled attempt to have us reweigh the evidence." *Id.* The court concluded that the ALJ "discussed all material aspects of Dr. Policherla's opinion and complied with § 1520c" and that substantial evidence supported his determination. *Id.*

Here, unlike in *Nasser*, Plaintiff has not asked the Court to reweigh the evidence. Instead, Plaintiff has argued that the ALJ failed to follow the regulatory requirement to evaluate the State agency psychological consultants' opinions for supportability and consistency, and to explain his consideration of those factors. (*See* Reply, Doc. No. 10 at PageID 2212.) For the reasons discussed above, this Court agrees that the ALJ failed to follow the regulatory requirement to evaluate the consultants' opinions for supportability. The failure to comply with a legal requirement constitutes reversible error.

### 2. The ALJ's consistency analysis is unsupported by substantial evidence.

As discussed above, the ALJ explained that he adopted Dr. Matyi's more restrictive limitations "both out of an abundance of caution and considering [Plaintiff's] subjective complaints, which are consistent with what the undersigned finds to be a reasonable reaction to a significant medical episode, even one that has apparently been fully recovered from." (AR, Doc. No. 7-2 at PageID 49.) Thus, the ALJ arguably explained his consideration of the consistency factor. However, the ALJ's conclusion regarding this factor is unsupported by substantial evidence.

13

The medical records document only one event that could be described as a "significant medical episode"—namely, the October 2019 aortic dissection that required aortic dissection repair surgery. (*See* AR, Doc. No. 7-2 at PageID 45; AR, Doc. No. 7-7 at PageID 345, 411.) But the ALJ did not cite to any evidence that showed that Plaintiff had "fully recovered from" this episode, much less that Plaintiff had recovered from a mental health perspective.

The ALJ summarized Plaintiff's mental condition earlier in the decision:

> The task, pacing, social interaction, and work routine limitations noted above are based on [Plaintiff's] depression and anxiety, which are substantiated by the November 2019 assessment by Jeanne Homan, LPCC, of dysthymia and anxiety (Exhibit 14F at 2). Dr. Paden also noted a clinical impression of anxiety following her November 2019 emergency department examination of [Plaintiff] (Exhibit 1F at 55). On multiple occasions between a February 2020 initial psychiatric evaluation and at least January 2021, Rafay Atiq, M.D., diagnosed [Plaintiff] with anxiety and a panic disorder with agoraphobia, adding an additional diagnosis of moderate major depressive disorder in January 2021 (see, for example, Exhibits 2F at 10-11, 26, 11F at 19-20). Dr. Menendez also assessed [Plaintiff] with anxiety on multiple occasions between at least November 2019 and June 2020 (see, for example, Exhibits 3F at 3, 4F at 4). Following his February 2020 emergency department evaluation of [Plaintiff], Dr. Bialick noted a clinical impression of an anxiety reaction (Exhibit 1F at 3).

(AR, Doc. No. 7-2 at PageID 47.) This summary does not indicate any improvement in Plaintiff's mental condition. Significantly, while some recent mental health treatment records reference some limited improvement, the underlying record does not show that Plaintiff "fully recovered." For example, as of June 2020, Plaintiff reported that he was still experiencing worsened anxiety and depression, as well as insomnia and fatigue that began after the October 2019 surgery. (AR, Doc. No. 7-8 at PageID 894.) During a

14

September 2020 telehealth visit, Plaintiff told psychiatrist Dr. Atiq that he was doing better and that his panic attacks were "less frequent and less intense." (AR, Doc. No. 7-12 at PageID 1915.) But at the next telehealth visit in January 2021, Plaintiff reported increasing depressive symptoms, which included a low mood, anhedonia, low energy levels, and helpless feelings. (*Id.* at PageID 1920.) Dr. Atiq documented a depressed mood and a restricted and dysphoric range of affect. (*Id.*) Plaintiff subsequently told the consultative physician in January 2021 that he experienced ongoing fatigue, feelings of depression, and insomnia. (AR, Doc. No. 7-10 at PageID 1709.)

Therefore, the ALJ's explanation that the psychological consultants' assessments were persuasive "considering [Plaintiff's] . . . reasonable reaction to a significant medical episode, even one that has apparently been fully recovered from" is unsupported by substantial evidence. This constitutes reversible error and provides another reason why the case should be remanded.

## VI.    REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

15

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the opinions of the State agency psychological consultants, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE ORDERED THAT**:

1.  Plaintiff's Statement of Errors (Doc. No. 8) is GRANTED;

2.  The Court REVERSES the Commissioner's non-disability determination;

3.  No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.  This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.  This case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge